## ATHLETIC SHOE CO. v. UNITED STATES.

### No. 44905.

District Court, N. D. Illinois, E. D.

Oct. 21, 1937.

George K. Bowden, of Chicago, Ill., for plaintiff.

M. L. Igoe, U. S. Dist. Atty., of Chicago, Ill.

WOODWARD, District Judge.

The single issue presented by this record is whether or not the excise tax imposed by section 609 of the Revenue Act of 1932 is applicable to football shoes, track shoes, and bowling shoes.

Section 609 of the Revenue Act of 1932 (47 Stat. 264, c. 209, § 609 [26 U.S.C.A. § 1420 et seq. note]) provides as follows: "There is hereby imposed upon the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to 10 per centum of the price for which so sold: Tennis rackets, tennis racket frames and strings, nets, racket covers and presses, skates, snowshoes, skis, toboggans, canoe paddles, polo mallets, baseball bats, gloves, masks, protectors, shoes and uniforms, football helmets, harness and uniforms, basketball goals and uniforms, golf bags and clubs, lacrosse sticks, balls of all kinds, including baseballs, footballs, tennis, golf, lacrosse, billiard and pool balls, fishing rods and reels, billiard and pool tables, chess and checker boards and pieces, dice, games and parts of games (except playing cards and children's toys and games); and all similar articles commonly or commercially known as sporting goods."

Plaintiff, an Illinois corporation, was engaged in the manufacture and sale of athletic shoes. During the month of February, 1935, it sold football shoes, track shoes, and bowling shoes in the net aggregate amount of $4,408.77. Assuming to act pursuant to the authority of section 609 of the Revenue Act of 1932, the Commissioner of Internal Revenue assessed an excise tax against plaintiff on account of such sales in the sum of $446.76, which includes interest. The assessment was paid under protest and a claim for refund was filed which was rejected. Plaintiff thereafter brought this suit to recover the amount paid under protest, alleging that section 609 of the Revenue Act of 1932 did not impose a tax upon the sale of football shoes, track shoes, or bowling shoes.

Neither football shoes, track shoes, nor bowling shoes are anywhere described except in the general language of section 609 which, after imposing a manufacturer's tax on the sale of specifically enumerated articles commonly used in six sports, and on games, imposes a tax on "all similar articles commonly or commercially known as sporting goods."

Baseball shoes are the only athletic shoes specifically referred to in the section. Plaintiff seeks to differentiate football shoes, track shoes, and bowling shoes from baseball shoes, and so to exclude them from taxation under the general language

826

of section 609 as articles not "similar" to baseball shoes.

The evidence tends to show that football shoes are of rugged construction, being equipped with cleats of rubber or leather which are detachable. They are sold almost exclusively to schools, colleges, and universities. They are specially designed and primarily adapted for use in football, but can be used by loggers and mountain climbers or for any use where protection and a maximum of traction is desired. The track shoes are designed in two styles, a running shoe and a jumping or field shoe, and these are in turn adapted for indoor and outdoor purposes. Those adapted for outdoor use are equipped with six round pointed spikes in the tap or forepart sole and two in the heel. The indoor shoe has a tap and heel constructed of crepe rubber and has no spikes. Indoor jumping shoes are adapted for use in yachting, camping, and bicycling. The track shoe is not otherwise an article of general consumption. Track shoes are sold almost exclusively to schools, colleges, and universities. They are especially designed and primarily adapted for use in athletic tract and field events. Bowling shoes are made in oxford and high cut styles in lace-to-toe construction. The soles are soft and pliable and without re-enforcement and accordingly incapable of supporting spikes. They have a smooth leather sole and may be used for bicycling or for any general use where a light smooth soled shoe is desired.

Neither football shoes, track shoes, nor bowling shoes are subject to any possible change or revision which would render them suitable for use in baseball.

Plaintiff contends that section 609 makes a classification of taxable articles and that this classification clearly excludes the taxation of football shoes, track shoes, and bowling shoes. The contention is that Congress has adopted subclassifications based upon the different sports, and, where the articles are not classified as to sports, Congress has specifically named each type of article that it intended to tax. The different sports specifically referred to are tennis, skating, baseball, football, basket ball, and fishing. Certain articles used in each given sport are specifically listed. In football the articles specifically listed are football harness, helmets, and uniforms. In another clause of the article, under the designation "balls of all kinds," footballs are made taxable. The specific classification nowhere includes the sports of bowling, track, boxing, hunting, golf, canoeing, curling, cricket, or fencing and perhaps others.

From this analysis of the internal structure of the section, plaintiff urges that Congress was meticulous in the selection of the different sports and the particular items in each sport, and certain items used in all the sports, which were to be subjected to the tax. Football helmets, harness, uniforms, and balls are specifically mentioned, but not football shoes. No items used in track and bowling sports are mentioned. Plaintiff concludes, therefore, that Congress did not intend to tax the sale of football shoes, track shoes, or bowling shoes.

This contention takes too narrow a view of the statute. Section 609 does not draw a distinction between "taxable" and "non-taxable" sports. When Congress listed the taxable articles, it adopted a classification by sports or contests simply at a matter of convenience in providing a comprehensive and representative list of articles to be taxed. One characteristic is common to all the articles specifically enumerated in the six sports particularly mentioned and that is that they are all commonly and commercially known as sporting goods. When, therefore, the Congress imposed a tax on "all similar articles commonly or commercially known as sporting goods," it intended to tax all articles having the same general characteristic, namely, all articles primarily adapted for use in a sport and commonly or commercially known as sporting goods. It was manifestly impracticable for Congress to enumerate in a statute the hundreds of items which are known as sporting goods. But it is also manifest that Congress intended to tax "all similar articles" to those specifically enumerated. The residuary clause comprehends all articles which have a characteristic in common with the list of forty-five itemized articles. The residuary clause must, therefore, be given a broad and general meaning.

The articles now under consideration, namely, football shoes, track shoes, and bowling shoes, have the general characteristic of the articles specifically mentioned in the sports referred to in the body of the section, that is, they are commonly and commercially known as sporting goods. Having such characteristics they are sub-

ject to the tax imposed by section 609, although structurally they are dissimilar to baseball shoes. This conclusion is, the court thinks, supported by the cases of Mills Novelty Co. v. United States (Ct.Cl.) 50 F.(2d) 476 and Samuel Winslow Skate Mfg. Co. v. United States (Ct.Cl.) 50 F.(2d) 299.

Plaintiff's counsel also reviews at some length the legislative history of the section to fortify his contention. While not satisfied that the legislative history of the section, including committee reports and congressional debates, supports counsel's contention as to the construction of the section, yet this is not a case in which resort should be had to those extrinsic aids of construction. The statute on its face is clear and unambiguous. In such case the court is not at liberty to resort to committee reports (and certainly not to congressional debates) to ascertain the meaning of the language employed in the statute. Helvering v. City Bank Co., 296 U.S. 85, 89, 56 S.Ct. 70, 72, 80 L.Ed. 62; Lewellyn v. Harbison (C.C.A.) 31 F.(2d) 740.

The government contends that the plaintiff did not bear the burden of the tax. The court finds as a fact that the plaintiff did not shift the tax to the vendees. So far as the evidence shows the sales to the vendees, although they were subsidiaries of the plaintiff, were bona fide sales.

Judgment may be entered in favor of the defendant.